# United States District Court
## for the Northern District of Oklahoma

Case No. 24-CR-39-JDR

UNITED STATES OF AMERICA,

*Plaintiff*,

*versus*

FREDDIE DEWAYNE GASKEY,

*Defendant*.

## OPINION AND ORDER

Defendant Freddie Dewayne Gaskey seeks to dismiss the two-count Indictment filed against him on the grounds that the statutes Mr. Gaskey is charged with violating, 18 U.S.C. § 922(g)(1) and 26 U.S.C. §5861(d), are unconstitutional. Dkt. Nos. 21, 22. Mr. Gaskey argues that, because the statutes unequivocally regulate conduct protected under the Second Amendment, it is the Government's burden to demonstrate that the regulations at issue are "consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *See* Dkt. Nos. 21 at 8; 22 at 21-25.[1] This Court concludes that the Government has failed to satisfy the burden set forth in *Bruen*. Nevertheless, the Tenth Circuit's holdings in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018), and *United States v. Artez*, 290 F. App'x 203 (10th Cir. 2008) bind this Court and preclude the dismissal of the Indictment. Consequently, Mr. Gaskey's motions to dismiss must be and are DENIED.

---

[1] All citations refer to CMECF pagination.

Case No. 24-CR-39

## I.

In 2008, the Supreme Court was tasked with determining whether the Second Amendment protects "only the right to possess and carry a firearm in connection with militia service," or whether it protects "an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home." *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). In concluding that the Second Amendment confers an individual right, *id.* at 595, the Court noted that, "whatever else it leaves to future evaluation, [the Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

Following the Supreme Court's recognition of an individual right in *Heller*,[2] the Tenth Circuit, on several occasions, considered the impact of that decision on portions of 18 U.S.C. § 922. For example, in 2009, the court considered a challenge to 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by individuals who have been convicted of a felony. *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009). The analysis in *McCane* was circumscribed: The court first noted the basis for the appellant's challenge, and then quoted dicta from *Heller* for the proposition that "nothing in [that] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 1047 (citing *Heller*, 554 U.S. at 626). The court rejected the appellant's Second Amendment challenge in view of the strength and scope of the dictum in *Heller*. *Id. McCane* gave no further analysis of the issue. *Id.*[3]

---

[2] The Court subsequently recognized that the Second Amendment's protections are fully applicable to the States. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750 (2010). *See Bruen*, 597 U.S. at 8.

[3] In a concurring opinion, Judge Tymkovich suggested that the reliance on *Heller*'s dictum was proper, albeit problematic: Under normal circumstances, the validity of § 922(g)(1)—which was not before the Supreme Court—would have been left to the lower

Case No. 24-CR-39

One year later, the Tenth Circuit considered a challenge to 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by individuals subject to certain restraining orders.[4] *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010). On this occasion, the court, unconstrained by any dicta, adopted a two-step analysis that had been employed by the Courts of Appeals for the Third and Seventh Circuits. *Id.* at 800 (citing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) and *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc)).[5] After recognizing that § 922(g)(8) burdens activities protected by the Second Amendment, the Tenth Circuit, applying intermediate scrutiny, concluded that the prosecution of the

---

courts to decide. *McCane*, 573 F.3d at 1047-50 (Tymkovich, J., concurring). The concurrence recognized, however, that the question of the constitutionality of § 922(g)(1) was "not really left to the lower courts" as a result of the Court's sweeping statement. *Id.* at 1047, 1049-50 (noting that the "existence of on-point dicta regarding various regulations" had the effect of "short-circuit[ing] some of the analysis and refinement that would otherwise take place in the lower courts," particularly where that dictum was "recent and not enfeebled by later statements"). While the concurring opinion recognizes the propriety of following dictum that strongly indicates the Supreme Court's direction, it questions whether "Second Amendment law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases." *Id.* at 1050.

[4] The statute is limited to orders restraining individuals from harassing, stalking, or threatening their children, intimate partners, or intimate partners' children in cases where a court has found that the restrained individual represents a credible threat to the intimate partner or child. *See* 18 U.S.C. § 922(g)(8). Additional procedural and factual limitations are also set forth in the statute. *Id.*

[5] In general, courts applying this pre-*Bruen* test considered first whether the government had established that a challenged regulation fell outside the Second Amendment's original scope. *See Bruen*, 597 U.S. at 18 (discussing the then-utilized means-end scrutiny employed by the courts of appeals). If the government met this initial burden, the inquiry ended, and the regulation was upheld. *Id.* If, however, the government failed to establish that the regulated activity was unprotected, the reviewing court would proceed to the second step, applying strict scrutiny to any restrictions impacting "core" Second Amendment rights, and intermediate scrutiny to all other restrictions. *Id.* at 18-19.

Case No. 24-CR-39

defendant under § 922(g)(8) was "consistent with the government's intended purpose in implementing that statute." *Id.* at 804.[6]

In the years that followed, the Tenth Circuit and other courts of appeals coalesced around the means-end analysis adopted in *Marzzarella*, *Skoien*, *Reese*, and elsewhere. *See Bruen*, 597 U.S. at 17; *id.* at 18-19, 19 n.4 (collecting cases). In 2022, however, the Supreme Court expressly rejected that two-part analysis as inconsistent with *Heller* and *McDonald*, concluding that neither of those cases supported the "appli[cation of] means-end scrutiny in the Second Amendment context." *Id.* The Court held that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government bears the burden of justifying its regulation by "demonstrate[ing] that [it] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. Only then "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (citation and quotation marks omitted).

---

[6] The Tenth Circuit had other occasions to consider the constitutionality of the various restrictions set forth in § 922(g). In 2009, the court once again relied primarily on dictum in *Heller* to uphold 18 U.S.C. § 922(g)(3), which prohibits the possession of firearms by those who have been unlawful users of or addicted to controlled substances. *United States v. Richard*, 350 F. App'x 252, 260 (10th Cir. 2009). *See* 18 U.S.C. § 922(g)(3). That same year, in response to an order granting a writ of mandamus precluding a trial court from issuing a jury instruction specific to § 922(g)(9), a dissenting judge questioned whether Congress's "finding regarding the dangerousness of domestic violence misdemeanants [was] constitutionally sufficient to warrant a blanket ban on firearm possession." *In re United States*, 578 F.3d 1195, 1196-97 (10th Cir. 2009) (Murphy, J., dissenting). By the time the court was presented with a challenge to 18 U.S.C. § 922(g)(5), the court had adopted the means-end analysis set forth in *Reese* and applied it in concluding that the congressional ban on the possession of firearms by aliens illegally or unlawfully present in the United States passed intermediate scrutiny. *United States v. Huitron-Guizar*, 678 F.3d 1164, 1170 (10th Cir. 2012).

Case No. 24-CR-39

Because the Supreme Court's opinion in *Bruen* directly discussed and rejected the Tenth Circuit's holding in *Reese*,[7] it is clear that *Reese* has been abrogated, and this Court is no longer bound to follow it. *E.g., United States v. Jackson*, 622 F. Supp. 3d 1063, 1066 (W.D. Okla. 2022) (recognizing that the Supreme Court "rejected means-end scrutiny and abrogated decisions that employed it"). But what of *McCane* and other cases that, while not specifically addressed in *Bruen*, were decided before the Supreme Court's directive that "the government must affirmatively prove that its firearms regulation[s] [are] part of the historical tradition that delimits the outer bounds of the right to keep and bear arms"? *Bruen*, 597 U.S. at 19.

Paradoxically, it appears that, while *Reese* falls under *Bruen*, the Tenth Circuit's opinion in *McCane* survives. *See Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (concluding, in view of *Bruen*'s reaffirmation of language in *Heller* and its implicit approval of regimes denying licenses to individuals with felony convictions, that "*Bruen* did not indisputably and pellucidly abrogate our precedential opinion in *McCane*"). This is so despite the fact that (1) *McCane* was decided before the Tenth Circuit adopted the means-end review declared insufficient in *Bruen*, (2) the Tenth Circuit's decision in *McCane* did not rest on *any* evidence justifying the restriction set forth in § 922(g)(1), let alone the evidentiary showing required under *Bruen*,[8] and (3) there is no evidence—at least on the record before this Court—that the government has *ever* satisfied its *Bruen* burden in *any* of the decisions on which *McCane* depends.

The rule in the Tenth Circuit appears to be that, to survive a Second Amendment challenge, the government may choose between (a) satisfying its *Bruen* obligations, or (b) pointing to a decision issued before *Bruen* that was not indisputably abrogated by *Bruen*. The either-or scenario created by

---

[7] *See Bruen*, 597 U.S. at 19 n.4.

[8] *See McCane*, 573 F.3d at 1047.

Case No. 24-CR-39

*Vincent* puts this Court in a predicament: Should this Court follow the Supreme Court's guidance and hold the Government to its burden under *Bruen*? Or should it follow *Vincent* and hold that, because *McCane* was not indisputably abrogated, § 922(g)(1) survives regardless of whether the Government has ever made the showing required by *Bruen*, in this case or otherwise?

If this Court had a blank slate on which to write this Opinion, it would, by necessity, follow the *Bruen* analysis and consider whether the mere possession of a handgun and ammunition is protected Second Amendment activity (it is)[9] and whether, in this case, the Government has demonstrated that the restriction set forth in § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation" (it has not).[10] *Bruen*, 597 U.S. at 17. But the slate is not blank. The Tenth Circuit has spoken, and, in doing so, has unequivocally declared that its decision in *McCane* remains good law. *Vincent*, 80 F.4th at 1202. This Court will follow that guidance, which, as the concurrence in *McCane* recognizes, is "how it should be"—even if the practice leaves open the possibility that the "law would have been better served if the regulations *Heller* addressed in dicta had been left to later cases." *McCane*, 573 F.3d at 1050 (Tymkovich, J., concurring). Applying *Vincent*, Mr. Gaskey's Motion to Dismiss Count I of the Indictment [Dkt. 21] must be DENIED.

---

[9] *E.g., Bruen*, 597 U.S. at 32 (recognizing the right to possess and carry weapons); *Heller*, 554 U.S. at 592 (same).

[10] The Government argues that Mr. Gaskey's challenge is precluded by Tenth Circuit precedent. *See* Dkt. 23 at 4-6. It presents no evidence "prov[ing] that [§ 922(g)(1)] is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

Case No. 24-CR-39

## II.

The Court now turns to Mr. Gaskey's motion to dismiss Count II of the Indictment, which charges Mr. Gaskey with violating 26 U.S.C. § 5861(d), part of the National Firearms Act. That Act prohibits any individual from receiving or possessing any "firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). For purposes of the Act, the term "firearm" is defined to include a weapon "made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(2).[11]

Mr. Gaskey argues, in passing, that § 5861(d) is inapplicable here because the firearm he is charged with possessing is "not a shotgun" under the definition set forth in 26 U.S.C. § 5845(d). This argument is without merit. The firearm at issue was indisputably a "shotgun" before it was modified. Dkt. 22 at 7. As modified, the firearm has a barrel length of roughly ten inches and an overall length of just over twenty-one inches. *Id.* By Mr. Gaskey's own admission, then, the firearm falls within the scope of §§ 5845(a)(2) and 5861(d).

Having established that § 5861(d) applies, the Court next considers Mr. Gaskey's argument that the Government cannot establish that the restriction on the firearm at issue in this case is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. As was the case with Count I of the Indictment, this argument appears to be foreclosed by the Tenth Circuit's pre-*Bruen* jurisprudence.

In *United States v. Artez*, the Tenth Circuit concluded that the possession of a sawed-off shotgun does not fall within the scope of Second Amendment's protections. 290 F. App'x 203, 208 (10th Cir. 2008). In reaching this

---

[11] "Shotgun" is defined as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder . . . ." 26 U.S.C. § 5845(d).

Case No. 24-CR-39

conclusion, the court of appeals relied on *Heller*'s statement that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* (quoting *Heller*, 554 U.S. at 625). In a subsequent case concerning a short-barreled rifle, the court of appeals once again "[took its] cue from *Heller* and conclude[d] that the possession of short-barreled rifles falls outside the Second Amendment's guarantee." *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018).

This Court sees no basis for concluding that *Artez* and *Cox* were abrogated by *Bruen*. Indeed, those cases, like *McCane*, rest upon dicta in *Heller* suggesting the direction the Supreme Court would take when addressing the constitutionality of restrictions on certain types of firearms. *See id.*; *Artez*, 290 F. App'x at 208 (citing *Heller*, 554 U.S. at 625). Furthermore, the language cited in those cases is analogous to similar language employed in *Bruen*. *Compare Heller*, 554 U.S. at 625 (reading prior case law "to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"), *with Bruen*, 597 U.S. at 21 (referencing *Heller* for the proposition that precedent supports "the historical tradition of prohibiting the carrying of dangerous and unusual weapons" (quoting 554 U.S. at 627) (internal quotation marks omitted)).

In the absence of clear abrogation by *Bruen* or another Tenth Circuit opinion, this Court concludes that *Artez* and *Cox* remain good law and are binding on this Court. *See Vincent*, 80 F.4th at 1202; *United States v. Williams*, No. 23-CR-00230-GKF, 2023 WL 6221770, at *4 (N.D. Okla. Sept. 25, 2023) (recognizing that the Tenth Circuit's holding in *Cox* that short-barreled rifles fall outside the scope of the Second Amendment "is broadly consistent with *Heller* and *Bruen*," and concluding that this Court "is bound to follow *Cox*"). In view of that precedent, this Court holds that § 5861(d) does not, on its face,

Case No. 24-CR-39

regulate constitutionally protected conduct. *Williams*, 2023 WL 6221770 at *5.

Mr. Gaskey suggests that § 5861(d) is unconstitutional as applied to him in this case because the firearm, as modified, is no more dangerous than—and is arguably inferior to—other firearms that do not fall within the ambit of § 5861(d)'s registration requirement. Dkt. 22 at 13-15. But the argument that other, more dangerous weapons can be obtained more easily does nothing to establish that § 5861(d) is unconstitutional as applied in this case, because the precedent that binds this Court establishes that short-barreled shotguns fall outside the protections afforded by the Second Amendment. *See Heller*, 554 U.S. at 625; *Artez*, 290 F. App'x at 208. The state of the law in the Tenth Circuit is that no one suffers a Second Amendment injury by being deprived of a short-barreled shotgun; given that precedent, Mr. Gaskey cannot establish that the statutory registration requirement associated with the short-barreled shotgun in this case is unconstitutional as applied to him. Mr. Gaskey's Motion to dismiss Count II of the Indictment [Dkt. 22] is DENIED.

## III.

This Court joins Judge Tymkovich in questioning whether it remains appropriate to follow a chain of references to dictum in *Heller* in the absence of any "serious[ ] wrestling" as to the validity of the decisions that predate that opinion, particularly in view of the Supreme Court's articulation of the Government's burden in *Bruen. McCane*, 573 F.3d at 1050 (Tymkovich, J., concurring). At present, it is unclear whether the Government would be capable of meeting its obligations in *Bruen* if it were required to do so.[12] But the question of whether the Government could sustain that burden if asked to do so is not before this Court. This Court is bound to follow *Vincent, Artez, Cox*,

---

[12] *McCane*, 573 F.3d at 1048-50 (Tymkovich, J., concurring); *see* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 709–14 (2009).

Case No. 24-CR-39

and the strong dicta in *Heller*, all of which dictate that Mr. Gaskey's Motions to Dismiss [Dkt. 21, 22] must be, and are, DENIED.

DATED this 15th day of April 2024.

JOHN D. RUSSELL
*United States District Judge*